**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HO WAN KWOK, *et al.*, | ) | Case No. 22-50073 (JAM) |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) | |
| | ) | Re: ECF No. 3713 |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| | ) | |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 24-05092 |
| v. | ) | |
| | ) | |
| ZETA GLOBAL CORP., | ) | |
| | ) | |
| Defendant. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

## MOTION FOR LEAVE TO APPEAL

Pursuant to 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. P. 8004, and in connection with the

*Notice of Appeal* (ECF No. 30) filed contemporaneously, defendant Zeta Global Corp. (the

"Defendant"),[2] by and through its undersigned attorneys, hereby moves for leave to appeal the

order entered on March 4, 2025 in which the Bankruptcy Court denied the *Joint Defendants'*

*Motions to Dismiss and Motions for Judgment on the Pleadings* (Case No. 22-50073 (JAM), ECF

---

[1] The Debtors are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Joint Defendants' Omnibus Memorandum (Dkt. No. 3713) (the "Memorandum").

No. 4189; Adv. Proc. No. 24-05092, ECF No. 29) (the "Decision"), which is annexed hereto as **Exhibit A**. In denying the Joint Defendants' dispositive motions, the Bankruptcy Court made threshold legal determinations regarding the Trustee's rights over Non-Debtor Transferors and their property that will have a wide-ranging impact on hundreds of adversary proceedings and defendants. As set forth in **Exhibit B** hereto, thirty-five of the Joint Defendants contemporaneously have filed appeals and sought the same interlocutory review of the Decision.

Cause exists to grant leave to appeal the Bankruptcy Court's Order, in which the Bankruptcy Court erroneously concluded that the Trustee has standing to pursue avoidance action claims against hundreds of ordinary trade creditors of ***non-debtor*** entities. The Trustee has far exceeded his powers as set forth by Congress under Title 11 of the United States Code (the "Bankruptcy Code") by bringing these claims. Resolving the discrete legal issues in the Decision will: clarify the scope of the Trustee's avoidance action powers in the Bankruptcy Case; facilitate the adjudication of the hundreds of adversary proceedings that have been filed with the Bankruptcy Court before both the parties and the Bankruptcy Court expend considerable resources litigating such cases; and expedite the Trustee's administration of the Debtor's bankruptcy estate. If this appeal is successful, it will have the effect of immediately disposing of hundreds of adversary proceedings and years of costly litigation or will, at least, materially affect the outcome of the underlying actions.

## **QUESTIONS PRESENTED**

Question 1:  Did the Bankruptcy Court commit reversible error when it concluded that the Trustee could avoid a transfer by a non-debtor entity as an initial transfer of the Debtor?

Question 2:  Did the Bankruptcy Court commit reversible error when it concluded that the Trustee is not required affirmatively to plead, with supporting allegations of fact, certain required prerequisites for application of reverse veil piercing to third-party creditors of the alleged alter ego entity?

Question 3:  Did the Bankruptcy Court commit reversible error when it concluded that the Trustee was not seeking to apply reverse veil piercing or alter ego retroactively, which is improper as a matter of law?

## PRELIMINARY STATEMENT

In February 2024, the Trustee commenced a massive litigation campaign against the Joint Defendants and more than 200 other defendants, most of which were unsuspecting third party providers of goods and services without notice of the Debtor's bankruptcy and having only arms-length business dealings with a collection of non-debtor entities (the "Non-Debtor Transferors").[3] In bringing these actions, the Trustee improperly seeks to avoid transfers made by the Non-Debtor Transferors based on conclusory allegations that the non-debtors are alter egos of the Debtor and that the Debtor effectuated the transfers "through" the non-debtor entities.  For reasons more fully explained below, the Trustee is attempting to selectively exercise avoidance action powers on behalf of the Non-Debtor Transferors as if they were debtors but without administering their estates or complying with all aspects of the Bankruptcy Code or applicable state law, resulting in an unsupported expansion of the congressionally prescribed powers for chapter 11 trustees and in extreme injustice to the Joint Defendants and hundreds of other avoidance action defendants.

Sections 544, 548, and 549 of the Bankruptcy Code and related applicable fraudulent transfer law permit the avoidance of initial transfers made by debtors.  Delaware law provides that an alter ego determination imposes vicarious liability on the alter egos of the Debtor; it does not make the Non-Debtor Transferors and the Debtor *one and the same*.  Moreover, under Delaware law, reverse veil-piercing—the imposition of the owner's liability upon the owner's

---

[3] The specific Non-Debtor Transferors are identified in **Exhibit B** and consist of the following entities: Lamp Capital LLC, Golden Spring (New York) Ltd., HCHK Technologies, Inc., HCHK Property Management, Inc., Greenwich Land LLC, and Lexington Property & Staffing, Inc.

alter ego—should be permitted **only if** it does not result in prejudice to unknowing third parties who unwittingly entered into legitimate business transactions with the alter ego entities. The Trustee violates this principle by attempting to use the equitable remedy of reverse veil-piercing to reach into the pockets of hundreds of counterparties who had arms-length business dealings with the purported alter ego entities—something no Delaware court has **ever** allowed.  In suing for alleged fraudulent transfers (and for other Joint Defendants, unauthorized post-petition transfers) as **initial transferees**, the Trustee also invokes equitable doctrines to deprive the Joint Defendants and other unknowing third parties of well-worn statutory defenses, including their rights to a good faith and value defense as **subsequent transferees**, as well as other statutory rights under the Bankruptcy Code.

The Bankruptcy Court, in considering four discrete but interrelated issues presented by the Joint Defendants, side-stepped substantive analysis on the dispositive issues and instead determined, without support, that the Trustee's avoidance claims could proceed because the complaints alleged that the Non-Debtor Transferors transferred property "beneficially owned" by the Debtor and, therefore, the Bankruptcy Court was obligated to treat those allegations as true for purposes of the Joint Defendants' motions under Fed. R. Civ. P. 12.  Thus, the Bankruptcy Court concluded that the legal effect of an alter ego ruling, whatever it may be, would not be dispositive of the Trustee's claims because the Trustee had separately alleged an alternative or parallel theory that the Debtor was the beneficial owner of the property transferred by the Non-Debtor Transferors.  In fact, this assertion was never alleged by the Trustee in his complaints against the Joint Defendants.  The Bankruptcy Court relied on bare and insufficient allegations of the Debtor's control of the Non-Debtor Transferors as the basis for purported ownership of the underlying

assets, a position that the Trustee never addressed in his briefing or argued before the Bankruptcy Court.

The Bankruptcy Court also determined that, in any event, avoidance law, and not the law of the state of formation of the Non-Debtor Transferors, governs the legal effect of an alter ego ruling, and that such law collapses the alter ego's assets into that of the Debtor.  In so doing, the Bankruptcy Court violated Supreme Court precedent and reached the opposite conclusion of numerous other bankruptcy courts that have considered the issue. The Bankruptcy Court further, and erroneously, concluded that Delaware law would hold the same and that it follows the "identity" theory of alter ego.  Finally, the Bankruptcy Court held that the alter ego ruling was not being applied retroactively, even though the alter ego ruling was being used to avoid transfers that happened years earlier.  In reaching this conclusion, the Bankruptcy Court declined to follow the law governing the analogous doctrine of substantive consolidation and the few cases in this nation that have considered and rejected the premise that application of the *equitable* alter ego doctrine could be used to harness the considerable powers under the Bankruptcy Code to avoid transfers to unknowing third parties.  The Defendant, joining with the Joint Defendants that have similarly sought interlocutory review, respectfully submits that these conclusions are unsupported by, and in fact contrary to, the applicable legal authorities, and seeks immediate review of the Bankruptcy Court's ruling.

## JURISDICTION

1.     The Bankruptcy Court below has subject-matter jurisdiction over the Trustee's adversary proceeding under 28 U.S.C. §§ 157(a) and 1334(b). The adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(H).  This Court has subject-matter jurisdiction to hear and decide this Motion under 28 U.S.C. § 158(a)(3).  The grounds for the relief requested are 11 U.S.C. § 105(a), 28 U.S.C. § 158(a)(3), and Federal Rule of Bankruptcy Procedure 8004.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

2.      On February 15, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (Dkt. No. 1.). There are only three debtors in these jointly administered chapter 11 cases: Ho Wan Kwok, Genever Holdings LLC, and Genever Holdings Corporation (collectively, the "Debtors"). With one exception, the Joint Defendants were not identified in the Debtors' schedules or included on the creditor mailing matrices in this case. (*See, e.g.*, Debtors' Schedules, Dkt. Nos. 1157, 78, 4; Amended List of Creditors for Ho Won Kwok, Dkt. No. 1043; and Amended List of Creditors for Genever Holdings Corporation, Dkt. No. 1163.). On July 8, 2022, the Bankruptcy Court entered an order appointing Luc A. Despins as the Trustee. (*See* Dkt. No. 523.)

3.      In February of 2024, the Trustee commenced a far-reaching litigation campaign consisting of more than 270 adversary proceedings, seeking to avoid allegedly fraudulent transfers under 11 U.S.C. §§ 544 and 548, and applicable state fraudulent transfer law, as well as post-petition transfers under 11 U.S.C. § 549 made by the Non-Debtor Transferors. The Trustee's litigation targets include entities that had business relationships with, and provided goods or services to, the Non-Debtor Transferors, all of which are Delaware entities.[4]

4.      These adversary complaints are nearly identical in their central allegations. The Trustee asserts that the Joint Defendants received money from the Non-Debtor Transferors and that such transfers were made in furtherance of a self-concealing shell game orchestrated by the Debtor to hinder, delay, or defraud creditors. The complaints do not allege with any factual

---

[4] The Joint Defendants include numerous legitimate third-party providers of goods and services, including landscapers, landlords, movers, IT providers, and retailers, as well as well-known companies such as Amazon Web Services, Inc., Amazon.com, Inc., Apple, Inc., American Express Company, Anthem Health Plans Inc., Cloudflare, Inc., Federal Express Corporation, Fox News Network, LLC, Hilton Management, LLC, and Meta Platforms Inc.

specificity the relationship between the Non-Debtor Transferors and the Debtor or how the transfers allegedly furthered the Debtor's shell game. Rather, they assert generally that transfers were part of a larger scheme to defraud and that the Non-Debtor Transferors held assets of the estate. In so doing, the Trustee incorporates by reference allegations asserted in prior or pending litigation before the Bankruptcy Court. (Decision at 10-11.)

5.     On September 6, 2024, the Trustee and forty-eight avoidance action defendants asked the Bankruptcy Court to be excused from mandatory mediation in order to address four common legal issues relating to the interaction of alter ego and avoidable transfer law at the heart of the Trustee's adversary proceedings.

6.     These stipulated issues were:

   i.    *Whether the Trustee can avoid an initial transfer by a non-debtor entity;*

   ii.   *Whether applicable law allows for reverse veil piercing or alter ego determinations;*

   iii.  *The effect under applicable law of a reverse veil piercing or alter ego determination; and*

   iv.   *Whether a determination of reverse veil piercing or alter ego may be applied retroactively.*

7.     On September 25, 2024, the Bankruptcy Court entered its *Order Further Amending Avoidance Action Procedures Order and Scheduling Joint Briefing of Motions to Dismiss and Motions for Judgment on the Pleadings* (Dkt. No. 3577), authorizing the Joint Defendants to file a joint memorandum of law under Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12 solely to address the above four issues—and nothing else. In accordance with the Bankruptcy Court's order, the Joint Defendants reserved all other arguments and defenses not raised.

8.     Accordingly, on October 18, 2024, the Joint Defendants filed motions to dismiss or for judgment on the pleadings under Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12, asserting

various challenges to the adversary proceedings based on the common issues, and principally arguing that an alter ego determination under Delaware law does not result in the merging of identities between the alter ego entity and the Debtor, such that a transfer made by a Non-Debtor Transferor can be avoided as an *initial transfer* of the Debtor. The Joint Defendants further argued that, even if the Trustee could obtain such extraordinary relief, to grant it retroactively would work a substantial injustice on the Joint Defendants as prejudice would be an unavoidable outcome, which is inconsistent with both Delaware law and bankruptcy cases considering the extraordinary application of alter ego and its impact on third-party creditors with no knowledge of the alter ego's underlying conduct.

9.      The Trustee argued in response that federal law, not state law, governs the impact of an alter ego determination and that, even if the Joint Defendants are correct, Delaware state law supports the merging of identities following an alter ego determination. The Trustee also argued that an alter ego determination does not have a retroactive effect, even though application of the alter ego doctrine for purposes of these avoidance actions would fundamentally alter the nature of their relationship with the Non-Debtor Transferors years after-the-fact.

10.      On March 4, 2025, the Bankruptcy Court issued the Decision denying the Joint Defendants' dispositive motions under Fed. R. Civ. P. 12. In so doing, the Bankruptcy Court concluded that "(i) the issues of law raised are not dispositive of the sufficiency of the pleadings; (ii) the defendants do not prevail on the issues of law; and (iii) many of the issues raised are issues of fact, not law[.]" (Decision at 3.)

11.      In relevant part, the Bankruptcy Court made the following legal determinations regarding the common issues presented by the Joint Defendants:

> i.      *Whether the Trustee can avoid an initial transfer by a non-debtor entity*: The Trustee does not seek to avoid an initial transfer by a non-debtor entity because the

Trustee alleges the individual Debtor made the transfers indirectly. Thus, the nominal transferor (the non-debtors that made the transfer) is not controlling because the Trustee advances both *alter ego* and *beneficial ownership* allegations to assert that the Individual Debtor is the transferor. (Decision at 50.)

ii.  *Whether applicable law allows for reverse veil piercing or alter ego determinations*: Reverse veil-piercing is recognized under Delaware law and the Trustee is not required to plead lack of prejudice to third parties of the alleged alter ego. (*Id.*)

iii. *What is the effect under applicable law of a reverse veil piercing or alter ego determination*: The effect of reverse veil-piercing under Delaware law is that the corporate form is disregarded, with the result depending on the substantive law of the companion cause of action. In bankruptcy, an alter ego determination can be used to establish that a debtor made an indirect transfer and renders the property of the debtor's alter ego property of the estate. (*Id.*)

iv. *Whether a determination of reverse veil piercing or alter ego may be applied retroactively:* Alter ego is a remedy for past and present abuse of the corporate form. It brings legal reality in line with factual reality and is not retroactive relief. (*Id.*)

12. In what was perhaps a surprise to all parties due to the fact that neither the Trustee nor the Joint Defendants raised or briefed the issue, the Court—without assessing the legal sufficiency of the allegations—concluded that the Trustee's companion allegations regarding the Debtor's "beneficial ownership" of the assets of the Non-Debtor Transferors meant that the stipulated issues (i) and (iii) concerning alter ego were not dispositive of the Trustee's avoidance claims. (Decision at 50.)

## II.   ARGUMENT

### A.   LEGAL STANDARD

"The district courts of the United States shall have jurisdiction to hear appeals . . . with leave of the court, from other interlocutory orders and decrees[.]" 28 U.S.C. § 158(a)(3). "The decision as to whether to grant leave to appeal an interlocutory order of a bankruptcy court is committed to the discretion of the district court." *Osuji v. U.S. Bank, Nat'l Ass'n*, 285 F. Supp. 3d 554, 557 (E.D.N.Y. 2018). In exercising that discretion, courts have looked to 28 U.S.C. § 1292(b)

for guidance and have granted such leave where "(1) [the order] involve[s] a controlling question of law; (2) over which there is substantial ground for difference of opinion . . ."; and (3) an immediate appeal would materially advance the ultimate termination of the litigation." *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005).

Although 28 U.S.C. § 1292(b) endows the Court with broad discretion, *see In re Roman Catholic Diocese of Albany*, 745 F.3d 30, 36 (2d Cir. 2014), "[w]hen a ruling satisfies these criteria and involves a new legal question or is of special consequence, then the district court should not hesitate to certify an interlocutory appeal." *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (citation and quotation marks omitted).

### B.    CONTROLLING QUESTIONS OF LAW

Section 28 U.S.C. § 1292(b) exists to resolve "pure question[s] of law . . . quickly and cleanly[,]" if a reversal "would terminate the action, or at a minimum . . . determination of the issue on appeal would materially affect the litigation's outcome." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (quotation marks omitted); *see also Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001) (certification proper if "certified issue has precedential value for a large number of cases").

"[I]n determining whether a 'controlling question' of law exists, courts in this Circuit consider 'whether: reversal of the [bankruptcy] court's opinion could result in dismissal of the action; reversal of the [bankruptcy] court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases.' *Fairfield Sentry Ltd. v. HSBC Sec. Services (Luxembourg) S.A.*, No. 21-CV-10316 (LAP), 2022 WL 3910679, at *7 (alterations in original) (citing *Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013)); *see also In re Aggrenox Antitrust Litig.*, 199 F. Supp. 3d 662, 670 (D. Conn. 2016) ("It will have a significant

impact on this case and perhaps in other cases, and the stakes are high for both the litigants and the court. . . .  Moreover, the economic issues discussed above are relatively technical, and their application to antitrust law is not without debate, nor is the caselaw touching on them uniform."). Here, this standard is easily met.

<strong><em>i.    Beneficial Ownership Allegations Do Not Render the Alter Ego Issues Non-Dispositive.</em></strong>

The Bankruptcy Court side-stepped a substantive analysis of many of the dispositive issues raised by the Joint Defendants by focusing instead on the theory that the Trustee's claims could proceed because the Trustee alleged that the Debtor, as the "beneficial owner" of the property, was the initial transferor to the Joint Defendants. (Decision at 16.)  Thus, according to the Bankruptcy Court, the Trustee's claims could proceed without regard to a reverse veil-piercing analysis.  The Bankruptcy Court erred as matter of law.

This "beneficial ownership" issue was not briefed by any party. It appears to be a theory cut from whole cloth by the Bankruptcy Court.  The court did not cite a single case actually supporting its analysis or applying similar reasoning.   Instead, the court quoted general propositions from statutes and cases that had nothing to do with a beneficial ownership issue, much less a theory that a court need not analyze alter ego or reverse veil-piercing issues so long as a trustee alleges that the debtor beneficially owned the property of the alter ego that was transferred. (*See e.g.*, Decision at 15 ("[C]ourts look to the substance, not the form, of a transfer." (collecting cases and deskbook cites))).

The primary case that the Bankruptcy Court relied on is *McNellis*—a case brought under the Bankruptcy Act of 1898.  (Decision at 15.)  *McNellis* concerned the issue of whether a debtor received value from a loan made to an alter ego.  *McNellis v. Raymond*, 42 F.2d 51, 53–54 (2d. Cir. 1970).  The district court determined at trial that the debtor received the benefit of the loan through

the alter ego and did not pay the lender as "a volunteer" without consideration. *Id.* at 53. The Second Circuit affirmed that reasoning. *Id.* at 53-54. The Second Circuit **did not** consider whether the bankruptcy trustee had standing to challenge the loan payments made by the debtor, nor did it consider the potential prejudice to third parties. Yet, the Bankruptcy Court relied on *McNellis* as if standing was considered (and decided) and as if the issues in this case are the same as they were in that case.

The Bankruptcy Court's conclusion, and creation of new law, is unsupported and contrary to the numerous cases cited by the Joint Defendants in their briefing to the Bankruptcy Court. There can be no question that there are substantial grounds for difference of opinion. The logical outcome of allowing such a theory created by the Bankruptcy Court is to obviate the need for a plaintiff to plead or prove alter ego, including reverse veil-piercing, and the attendant considerations of prejudice to third parties in direct contravention of settled law where state law determines property rights, and the nature and effect of state law causes of action.

> a.    *Under Rule 12, Legal Conclusions Are Not Deemed True.*

The Bankruptcy Court suggested that the "beneficial ownership" allegation was a factual allegation that it was forced to accept as true. Not so. While a reviewing court assessing a motion brought pursuant to Fed. R. Civ. P. 12 will accept all factual allegations as true, it shall give no effect to legal conclusions couched as factual allegations. *Mercer v. Gupta,* 712 F.3d 756, 758-59 (2d Cir. 2013); *Wornick v. Gaffney*, 544 F.3d 486, 490 (2d Cir. 2008) ("Whether the debtor has a legal or equitable interest in property such that it becomes 'property of the estate' under section 541 is determined by applicable state law."); *see generally United States ex rel. Wood v. Allergan, Inc.,* 899 F.3d 163, 168 (2d Cir. 2018) (denial of Rule 12(b)(6) motion subject to *de novo* review) (citing *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015)).

Here, "[t]he alter ego complaints seek declaratory judgments of alter ego and beneficial ownership[.]" (Decision at 17.)  The descriptors "beneficial owner" or "beneficially owned" do not appear in the complaints against the Joint Defendants, and the bare allegation in the alter ego adversary proceedings that the Debtor was the beneficial owner of the property transferred to the Joint Defendants is a threadbare legal conclusion wholly unsupported by the pleadings.  *Compare* Decision at 18-19 ("Assuming the Trustee has plausibly alleged the Individual Debtor beneficially owns the alter egos, he has plausibly pled the alter egos are affiliates of the Individual Debtor, through which the Individual Debtor could indirectly transfer assets. . . .  Therefore, the Court finds the parties' argument regarding the effect of alter ego is not dispositive of the sufficiency of the Trustee's pleading the Individual Debtor is the transferor.") (citation omitted) *with* Decision at 18. n.18 ("The Court does not reach the issue of whether the Trustee has plausibly pled the Individual Debtor's beneficial ownership of the alter egos because that is not among the four issues.").

While claiming that it did not reach this issue, the Bankruptcy Court did precisely that (and without allowing the Joint Defendants to address the issue).  Moreover, the court appeared to interpret the allegation of beneficial ownership, not as the legal conclusion that it is, but as a factual allegation for purposes of these motions.  The Joint Defendants are aware of no legal authority that would support either outcome.

> b.      *As a Matter of Record, The Trustee Has Pled Contradictory and Irreconcilable Allegations Regarding the Status of the Alleged Alter Egos That Preclude Any Claim That the Debtor Has "Beneficial Ownership" of the Assets of the Non-Debtor Transferors.*

"General, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint."  *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir.1995); *see L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 430 (2d Cir. 2011); *Blue Tree*

13

*Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004) (refusing to credit allegation "belied" by letters attached to the complaint). The court "need not credit conclusory allegations . . . nor suspend common sense when analyzing the complaint." *AJ Energy LLC v. Woori Bank*, 829 F. App'x 533, 534 (2d Cir. 2020) (citations omitted); *see Columbia Park E. MHP, LLC v. U.S. Bank Nat'l Ass'n*, 766 F. App'x 271, 273 (6th Cir. 2019) ("Our job on an appeal from a motion to dismiss is to examine the complaint's factual content and determine whether, taking those facts as true, the plaintiffs stated a claim upon which relief can be granted.").

It bears emphasizing that nowhere in the briefing did the Trustee assert that the Debtor was the beneficial owner of all of the assets of the Non-Debtor Transferors that were transferred to the Joint Defendants. The Trustee's own allegations in the Bankruptcy Court contradict such an assertion. In an adversary proceeding pending before the Bankruptcy Court, the Trustee alleges that the same Non-Debtor Transferors as are alleged in these adversary proceedings were simultaneously *initial transferees* of fraudulent transfers made by the Debtor and *the Debtor transferor himself.* *Compare* Adv. Pro. 24-05275, ECF No. 1, ¶ 4 ("Following the Petition Date, the Debtor, through his alter-ego shell companies, transferred funds to the Defendants as ***initial transferee***, as follows: a. $3,499,935.00 ***to Lamp Capital***; b. $2,054,984.06 to Golden Spring; c. $550,000.00 ***to Greenwich Land***; d. $4,268,011.37 ***to HCHK Technologies***; e. $1,128,921.69 ***to HCHK Property***; f. $4,178,030.29 to Lexington[.]) (emphasis added) *with* Decision at 17 (selectively citing allegations incorporated by reference against Joint Defendants) ("For example, the complaint against Golden Spring alleges Golden Spring is the alter ego of the [Individual] Debtor and the [Individual] Debtor is the equitable owner of Golden Spring and/or its assets.").) In the Decision, the Bankruptcy Court appeared to consider two parallel, yet conflicting, realities

14

under which the Non-Debtor Transferors were sufficiently independent from the Debtor that they could be deemed initial transferees (in the quoted case, Adv. Pro. 24-05275) while at the same time being one and the same as the Debtor so that there was no daylight between them.  That is far different than pleading an alternative theory of liability; rather, it requires a view of the record that defies common sense, rationality, and credulity.  *Wight v. BankAmerica Corp.,* 219 F.3d 79, 89 (2d Cir.2000) ("Judicial estoppel is designed to prevent a party who plays fast and loose with the courts from gaining unfair advantage through the deliberate adoption of inconsistent positions in successive suits."); *see In re Adelphia Recovery Tr.,* 634 F.3d 678, 695-96 (2d Cir. 2011).

> c.    *The Trustee Has Alleged Facts Wholly Inconsistent and Irreconcilable with the Bankruptcy Court's Interpretation of the Claims Against the Joint Defendants.*

The Trustee alleges no facts in the underlying and incorporated alter ego complaints, beyond threadbare conclusory statements, to support the Debtor's claim to beneficial ownership of the *assets* of the alter egos.  Instead, the Trustee alleges that the Debtor simply moved funds between alter egos *and omits where the funds came from.*  This omission appears to be purposeful. In the Trustee's civil RICO complaint, he alleges in detail that assets moved through various layers of the Debtor's alleged enterprise after first being obtained by money-raising "funding entities" from the Debtor's fraud victims.  (Adv. Pro. 24-05273, ECF No. 1, pp. 1, 27.)  In that case, the Trustee is not shy about identifying the origin of the funds – the defrauded victims.

As pointed out by the Bankruptcy Court throughout the Decision, the elements of an avoidance claim require a transfer of *the Debtor's property.*  In each complaint against the Joint Defendants, the Trustee has only alleged facts sufficient to sustain an alter ego basis for the estate's interest in the transferred property (but not legally sufficient under Delaware law, as described below).  Any conclusion to the contrary would be an end-run around well-developed fraudulent

transfer law, which requires more than just conclusory allegations that the assets actually belonged to the Debtor.

While the Bankruptcy Court appeared to accept as true the Trustee's threadbare legal conclusions, it failed to acknowledge that there are other genuine legal conclusions that may reasonably be drawn from the Trustee's allegations.  Take the following allegation from the Trustee's civil RICO complaint:

> [the] money-raising schemes . . . collectively defrauded victims of hundreds of millions of dollars, included soliciting sham investments in a purported cash-for-stock loan program (the Farm Loan Program), encouraging the purchase of 'memberships' in a lifestyle club based on the false promise of member benefits (G-Club), and creating a fake cryptocurrency and related exchange platform (the Himalaya Exchange). While the victims were promised returns on their investments—whether in the form of interest payments, membership benefits, support for political causes, or otherwise—the Debtor and the other participants in the schemes fraudulently diverted the proceeds for their own personal gain.

(Adv. Pro. 24-05273, ¶ 6 (citation omitted); *see also* ¶ 98 (describing layers of entities allegedly used by the Debtor to conceal assets)).

According to the Trustee, the ultimate source of the assets was the Debtor's defrauded victims.  The Bankruptcy Court may not ignore common sense, real-world implications of these factual allegations.  *See Flynn v. CNN, Inc*., 621 F. Supp. 3d 432, 436 (S.D.N.Y. 2022) ("the truth of factual allegations that are contradicted by documents properly considered on a motion to dismiss need not be accepted."); *Carson Optical Inc. v. eBay Inc*., 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) ("Although a defendant is permitted to plead alternative theories of liability, where plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss."); *see also United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985) (victim of fraud has priority over assignee for benefit of general creditors); *In re Koreag, Controle et Revision S.A*., 961 F.2d

341, 352 (2d Cir. 1992) ("Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition" and that a constructive trust "confers on the true owner of the property an equitable interest in the property superior to the trustee's[.]") (citations omitted). In this case, there is a common-sense reason why the Trustee cannot, and has not, pleaded beneficial ownership with the required specificity– the law will not permit it.

> ### ii.    *A Reversal of the Bankruptcy Court on Any of the Stipulated Issues Would Materially Affect Dozens, If Not Hundreds, of Adversary Proceedings.*
>
> #### a.    *Issue (i)*

If the District Court were to disagree with the Bankruptcy Court and determine that the Trustee is in fact seeking to avoid an initial transfer by a non-debtor entity, that holding would result in a material impact to the Trustee's theory of liability because subsequent transferees are afforded far greater protections than initial transferees under both federal and state law.  For example, the Trustee's claims 11 U.S.C.§ 549 based on alleged post-petition transfers (asserted against other Joint Defendants) would be effectively eliminated, because he would be forced to acknowledge that the relevant defendants (as subsequent transferee trade creditors) invariably provided goods and services through arms-length transactions for reasonably equivalent value and thus have a complete defense to the claims.  Similarly, the Trustee's fraudulent transfer claims pursuant to Sections 544 and 548 of the Bankruptcy Code effectively would be eliminated, because the Trustee would be forced to acknowledge that the Joint Defendants have a subsequent transferee defense under 11 U.S.C. § 550(b)(1).[5]

---

[5] 11 U.S.C. § 550 provides, in pertinent part:

(a)    Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

### b.   Issue (ii)

If the District Court were to conclude that pleading lack of prejudice to third party creditors of the alleged alter ego is a condition precedent to bringing a reverse veil-piercing claim (given that Delaware's highest court has not decided whether reverse veil-piercing is recognized under Delaware law), such a determination would result in dismissal of each action against the Joint Defendants.  In fact, such dismissal would have to be with prejudice, because the Trustee could not possibly plead a lack of prejudice to the Joint Defendants, since the very act of bringing these cases against the Joint Defendants has resulted in substantial prejudice against them.

### c.   Issue (iii)

If the District Court were to conclude that reverse veil-piercing under Delaware law does not render the property of the Debtor's alter ego property of the estate, for the reasons more fully discussed in Part II.B.*(i)* regarding the Court's treatment of the Trustee's beneficial ownership allegations, such a determination would almost certainly result in dismissal of the actions against the Joint Defendants because without a determination that the property is part of the estate, the Trustee lacks standing to bring the claims.

### d.   Issue (iv)

Finally, if the District Court were to conclude that the relief sought by the Trustee is, in fact, tantamount to *nunc pro tunc* relief, as expressly prohibited by the United States Supreme

---

(1)     the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2)     any immediate or mediate transferee of such initial transferee.

(b)     The trustee may not recover under section [1] (a)(2) of this section from—

(1)     a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2)     any immediate or mediate good faith transferee of such transferee.

Court in *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 589 U.S. 57, 65 (2020), and as otherwise rejected in case law dealing with the use of alter ego to create avoidance liability or in the analogous context of substantive consolidation, the impact on these cases would be material, as each and every transfer at issue in actions against the Joint Defendants could not be avoided by the Trustee under the theory presently alleged.

###    C.    SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION

The second prong of 28 U.S.C. § 1292(b) requires "a genuine doubt as to whether the [lower] court applied the correct legal standard in its order." *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008). Such a doubt may arise from "conflicting authority on the issue, or … [if] the issue is particularly difficult and of first impression for the Second Circuit." *Id.*; *see Chavez v. Occidental Chem. Corp.*, 300 F. Supp. 3d 517, 539 (S.D.N.Y. 2018) (second prong met because "[t]he issue is also a difficult one on which reasonable minds can disagree and which the Second Circuit has not yet addressed").

###    i.    Question 1:  Did the Bankruptcy Court commit reversible error when it concluded that the Trustee could avoid a transfer by a non-debtor entity as an initial transfer?

For the reasons described above, the Bankruptcy Court's conclusion that the Trustee's claims could proceed under a "beneficial ownership" theory is flawed, unsupported by precedent, and inconsistent with the Trustee's theory of this case. *See* Part II.B.*(i)*. The Bankruptcy Court's decisions on the stipulated issues also are flawed—and at least present substantial grounds for difference of opinion.

Case 24-05092    Doc 31    Filed 03/18/25    Entered 03/18/25 17:11:58    Page 20 of 33


      *a.*     *Part I: Did the Court err when it concluded that the legal effect of an alter ego determination was determined by state and federal avoidance law?*

The Bankruptcy Court erred in concluding that substantive avoidable transfer law controls the effect of the alter ego determination. The Bankruptcy Court's legal conclusion was in error and contrary to binding Supreme Court authority providing that state law controls the nature and extent of the Debtor's property interests. *Butner v. United States*, 440 U.S. 48 (1979) ("property interests are created and defined by state law, unless some federal interest requires a different result"). Numerous courts have explicitly recognized that state law governs veil-piercing, not substantive fraudulent transfer law. *E.g.*, *In re 10th Ave Distributors, Inc.*, 97 B.R. 163, 164 (S.D.N.Y. 1989) ("it is clear that the contours of the alter ego cause of action are to be determined with reference to state law"); *see also McElroy v. First Energy Corp.*, 824 F. App'x 97, 99 (3d Cir. 2020); *In re Yersushalmi*, 487 B.R. 98, 109-10 (Bankr. E.D.N.Y. 2012); *In re Duckworth*, 2012 WL 4434681, at *8 (Bankr. C.D. Ill. Sept. 24, 2012) ( "piercing the corporate veil is a state common law equitable remedy that has nothing to do with federal bankruptcy law").

The position adopted by the Bankruptcy Court was roundly rejected by the Ninth Circuit Court of Appeals in *In re Costas*, 555 F.3d 790, 797 (9th Cir. 2009), in which the appellate court concluded that Section 548 of the Bankruptcy Code only applies to interests in "property" and "property" is defined by state law. The Court in *Costas* rejected the argument that the court should look beyond state law, stating "Congress premised Section 548's application on the existence of 'property' or 'an interest . . . in property'" and that "[n]othing suggests that these terms merit a special gloss simply because they appear in a *federal* avoidance provision." *Id.* at 798 (emphasis in original).

In the Decision here, the Bankruptcy Court rejected binding Supreme Court precedent and numerous other authorities, relying instead on the 1970 decision by the Second Circuit in *McNellis*,

420 F.2d 51 (2d Cir. 1970). But in *McNellis*, the Second Circuit did not even address whether a bankruptcy trustee had standing to avoid transfers made by a non-debtor. Nor did it consider whether state law or fraudulent transfer law governs the effect of the alter ego determination. No discussion appears in the decision about what law determines the effect of the alter ego determination. Instead, the court in *McNellis* affirmed the trial court decision that the trustee failed to demonstrate reasonably equivalent value (one of the elements of a fraudulent transfer claim) because the debtor was an alter ego of the entity that was the obligor on the loan. In the Decision, the Bankruptcy Court erroneously extended the *McNellis* decision to the legal issues, including whether state law governs the effect of the alter ego determination and whether the Trustee has standing to pursue transfers made by non-debtors.

> b.   *Part II: Did the Court err when it concluded that Delaware law alter ego law causes the identity of the alter ego and the Debtor to merge?*

Delaware law controls the effect of an alter ego ruling in this case. *In re Brower,* 2023 WL 2927175, at *9 (B.A.P. 9th Cir. Apr. 12, 2023), *aff'd,* 2024 WL 2826283 (9th Cir. June 4, 2024). But because the Bankruptcy Court held otherwise by improperly focusing on federal common law and New York state law, it almost wholly avoided the issue. (Decision at 34, 42 (concluding that the alter ego doctrine operates differently with respect to avoidance actions)). As the Joint Defendants argued, Delaware law follows the vicarious liability theory of alter ego and not the identity theory. The result is that the Trustee cannot collapse the alter egos into the Debtor. Delaware law makes this distinction, which is no "accident of our legal system." (Decision at 32.) There is no case holding that the law is different in the context of an avoidance action.

The Joint Defendants cited a plethora of cases to support their position that Delaware alter ego law imposes vicarious liability only—*i.e.*, that the alter ego entity becomes liable for the obligations of the debtor—and does not collapse the identities of the alter ego and the debtor into

one. *Otto Candies, LLC v. KPMG, LLP*, 2020 WL 4917596, at *9 (Del. Ch. Aug. 21, 2020) (veil-piercing or alter ego doctrine is a path to vicarious liability in Delaware); *RS Air, LLC v. NetJets Aviation, Inc. (In re RS Air, LLC)*, 651 B.R. 538, 545 n.5 (B.A.P. 9th Cir. 2023) (under Delaware law, "[a]lthough the alter ego doctrine requires a showing that the two entities 'operated as a single economic entity,' . . . the result is not to deem the entities the same, but to hold one liable for the other's debts . . ." [internal citations omitted]); *see also NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) (under Delaware law, "the distinction between the entity and its owner 'may be disregarded' to require an owner to answer for the entity's debts") (citing *Pauley Petroleum Inc. v. Cont'l Oil Co.*, 43 Del. Ch. 516, 521 (1968)); *Wilson v. Thorn Energy, LLC*, 787 F. Supp. 2d 286 (S.D.N.Y. 2011) (same); *BFI Waste Sys. of N. Am., LLC v. Shaw Env't & Infrastructure, Inc.,* 2010 WL 5647118, at *5 (E.D. Mo. July 30, 2010), *amended on reconsideration*, 2010 WL 4622519 (E.D. Mo. Nov. 5, 2010) (under Delaware, law in certain circumstances, "the alter ego doctrine allows for piercing the corporate veil so that **liability** can be placed on a parent corporation" (emphasis added)); *Stillwater Liquidating LLC v. Net Five at Palm Pointe, LLC (In re Stillwater Asset Backed Offshore Fund Ltd.)*, 559 BR 563, 586–87 (Bankr. S.D.N.Y. 2016) (rejecting alter ego theory to selectively pool assets of Delaware entity with debtor entity for purposes of creating causes of action under 11 U.S.C. § 544 and stating that the court "knows of no support for the idea that alter ego theories can be used in this selective and self-serving way"). The Decision either ignores these cases or cites them to support tangential points without regard for their holdings.  (Decision at 32-33.)  The sheer number of cases supporting the Joint Defendants' position alone creates a substantial ground for difference of opinion.

The *Manichaean* case, which the court quotes in support of its decision to apply the identity theory, does not hold that the identity theory is applicable in Delaware. (Decision at 34 (quoting

*Manichaean*).)  The opposite is true.  The court in *Manichaean* recognized that "[a]t its most basic level, reverse veil-piercing involves the imposition on a business organization for the liabilities of its owners."  *Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694, 710 (Del. Ch. 2021). *Manichaean* involved a party seeking to do just that: hold defendant-subsidiaries vicariously liable for the debt of a parent entity (exactly the type of alter ego claim permitted under vicarious liability theory).  *Id.* at 700 ("[T]he plaintiffs seek to hold Exela and its subsidiaries liable under two theories: (1) given the abuse of corporate form by Exela and its subsidiaries . . . the Court should pierce the SourceHOV Holdings corporate veil upwards to reach Exela and downwards to reach SourceHOV Holdings' solvent subsidiaries so that Plaintiffs can enforce their charging order against these entities[.]")  The case did not involve an attempt to bring transfers from alleged alter egos into an estate.

The cases included in string cites in the Decision do not support the court's conclusion either. For example, the court cites *ASARCO LLC v. Ams. Mining Corp.*, 382 B.R. 49, 66–68 (S.D. Tex. 2007), and *Spring Real Est., LLC v. Echo/RT Holdings, LLC*, 2016 WL 769586, at *3 (Del. Ch. Feb. 18, 2016), for the proposition that allegations of alter ego are sufficient to plead an avoidance action.  (Decision at 34.).  But *ASARCO* miscites *Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. Ch. 1968), as Delaware law for the proposition of identity theory, when the cited comment in *Pauley* was *dicta* unrelated to any issue addressed in that decision. Similarly, *Spring Real Estate* cites *In re American Int'l Refinery*, 402 B.R. at 742–46, for the proposition that Delaware law applies the identity theory of alter ego, but *American Int'l Refinery* explicitly applied ***Nevada*** law (which follows the identity theory) and was decided by the U.S. Bankruptcy Court for the Western District of Louisiana.  The Decision fails to address the

problems with relying on *ASARCO* and *Spring* (as explained in the Joint Defendants' briefing) and instead inserts them into a string cite without comment.

Since Delaware follows the vicarious liability theory, not the identity theory, in imposing alter ego liability, the reasoning of the Sixth Circuit in *In re Howland*, 674 F. App'x 482 (6th Cir. 2017), supported the dismissal of the actions against the Joint Defendants. As a starting point, *Howland* looked to the law of the state of formation of the alleged alter ego to determine its effect, which is at odds with the Bankruptcy Court's Decision. *Id.* at 485. The Decision, however, disagrees with *Howland* and provides a number of justifications, each of which is flawed. The reasoning in *Howland*—which has been used by the numerous cases cited in the Decision at 29-30—is sound: the vicarious liability theory "dooms the trustee's fraudulent transfer claims against [the buyer] under a veil piercing theory." *Id.* at 487. Under the "vicarious liability approach, . . . veil piercing does not give the pierced entity (*i.e.*, the debtor) an interest in the alter ego's assets . . . ." *Id.* For these reasons, the *Howland* court held the trustee's avoidance claim should be dismissed. *Id.*

As the Second Circuit stated in *Kerstez v. Korn*, "[t]he district court's ruling was legal error. An action to pierce the corporate veil does not deny a corporation's legal existence, as the district court suggested. . . . [I]f successful, the claim does not affect the corporation's legal structure or existence as against all persons, just as a judgment that an employer is liable for some specific acts of its employee under a *respondeat superior* theory does not render the employer generally liable for all the employee's debts. 698 F.3d 89, 91 (2d Cir. 2012) (describing the effect of an alter ego determination under Delaware law).

The fact that the Decision is at odds with an oft-cited opinion of the Sixth Circuit, combined with an absence of controlling Second Circuit precedent, provides more than a sufficient basis for a difference of opinion to grant interlocutory review.

>    ii.    *Question 2:  Did the Court commit reversable error when it concluded that the Trustee is not required affirmatively to plead, with supporting allegations of fact, certain required prerequisites for application of reverse veil piercing to third-party creditors of the alleged alter ego entity?*

Reverse veil-piercing permits a downstream alter ego affiliate to be held liable for the debts of its upstream parent.  On the issues that were presented to the Bankruptcy Court in these cases, however, a threshold question was whether the Court's prior reverse veil-piercing rulings—all of which affected the alter ego entities themselves and certain insiders of the Debtor only—can be lawfully applied if such application would result in prejudice to unknowing third parties, such as the Joint Defendants here, who were simply conducting arms-length business with the purported alter ego entities.  *See Manichaean Capital*, 251 A.3d at 713.

The court in *Manichaean* – the lead Delaware case on the issue – discussed at length, and stressed repeatedly in its opinion, that reverse veil-piercing should only be permitted in "limited circumstances" and with "circumscribed execution."  *Id.*; *accord Gracey v. Albawardi*, 2024 Del. Ch. LEXIS 383 (2024) (reverse veil piercing is sanctioned only in the most exceptional circumstances).  The *Manichaean* court also favorably cited cases from other jurisdictions on this issue, *id.* at 711–13, adopted the reasoning of those decisions, mentioned several times that reverse veil-piercing should be permitted only if it does not prejudice unknowing third-party creditors of the alter ego entity, and concluded as follows:

>    Only in cases alleging egregious facts, **coupled with the lack of real and substantial prejudice to third parties**, should the court **even consider** utilizing the reverse veil-piercing doctrine.
>    . . .
>    Applying this framework, Delaware courts will be well-equipped to handle the varying concerns courts and commentators have rightfully expressed regarding

> reverse veil-piercing. The expectations of third-party creditors and investors will
> be well-protected.

*Id.* at 714-15 (emphasis added); *id.* at 711 ("Courts declining to allow reverse veil-piercing have relied primarily, and understandably, on a desire to protect innocent parties."); *see Connolly v. Englewood Post No. 322 Veterans of Foreign Wars of the United States, Inc. (In re Phillips)*, 139 P.3d 639, 646 (Colo. 2006) (holding that before authorizing reverse veil-piercing, court must consider whether innocent creditors would be prejudiced as result of such piercing and if there was prejudice, reject its application); *C.F. Trust, Inc. v. First Flight L.P.*, 580 S.E.2d 806, 811 (Va. 2003) (reverse veil-piercing requires consideration of harm to "innocent secured and unsecured creditors").

In the process of making its ruling, the court in *Manichaean* specifically considered whether reverse veil-piercing would cause prejudice to third-party creditors and, based on the allegations in the complaint, determined it would not. *Manichaean,* 251 A.3d at 718 ("There is no basis in the Complaint to infer that reverse veil-piercing will cause harm to innocent third-party creditors."). But a ruling that substantially prejudices unknowing third parties by requiring them to disgorge large sums of money that were paid to them in exchange for the provision of goods and services to the Non-Debtor Transferors is something else altogether. Under the express holding of the court in *Manichaean*, *is expressly not permitted under Delaware law*.

Given that under *Manichaean* the absence of any prejudice to innocent third-party creditors is a ***mandatory, prima facie*** requirement before the application of reverse veil-piercing *can even be considered*, it follows that the causes of action currently set out in the Trustee's complaints against the Joint Defendants fail to state a viable claim as a matter of Delaware law. *See Gracey*, 2024 Del. Ch. LEXIS 383, at *11 (complaint dismissed with prejudice where allegations suggested allowing alter ego claim to proceed based on a reverse pierce theory would harm third parties).

To be sure, the Trustee has not even purported to explain how prejudice to the Joint Defendants can be avoided when the entire purpose and objective of these adversary proceedings is to claw back millions of dollars of payments from them. Despite favorably citing the *Manichaean* opinion more than a dozen times in its Decision, the Bankruptcy Court simply ignored this key aspect of the ruling in that case and accordingly erred in failing to require, at a minimum, that the Trustee include specific factual allegations in his pleadings that plausibly allege that the Joint Defendants here (a) were not innocent and unknowing vendors of goods and services to the Non-Debtor Transferors, and (b) will not be prejudiced by lawsuits against them requiring protracted and expensive defense costs and seeking the clawback and return of millions of dollars.

       iii.    *Question 3: Did the Court commit reversable error when it concluded that its determination of reverse veil piercing or alter ego wasn't being applied retroactively by the Trustee?*

The Decision raises several controlling questions of law concerning the retroactive application of reverse veil piercing and alter ego to create avoidance liability under the Bankruptcy Code, for which there are substantial grounds for difference of opinion.

First, there is substantial ground for a difference of opinion in the Bankruptcy Court's application of the alter ego doctrine to create fraudulent transfer liability under 11 U.S.C. §§ 544 and 548, and most troublingly, unauthorized post-petition transfer liability under 11 U.S.C. § 549, by ignoring or otherwise rejecting case law governing the retroactive application of the analogous equitable doctrine of substantive consolidation. In particular, the Bankruptcy Court declined to apply the holding in the seminal case of *In re Auto Train Corp., Inc.*, 810 F.2d 270 (D.C. Cir. 1987), which rejected the retroactive application of substantive consolidation to create avoidance liability under 11 U.S.C. § 547. In *Auto Train*, the D.C. Circuit rejected substantively consolidating the bankruptcy estate of the non-debtor transferor retroactive to the date of the bankruptcy filing of its affiliate for purposes of bringing certain transfers within the scope of the

preference statute. *Auto Train*, 810 F.2d at 276-78. The court observed that applying substantive consolidation retroactively would thwart the Bankruptcy Code's policy of requiring transferees to disgorge transfers based on the date of the *bankruptcy filing of its transferor* and thereby accelerate the race to the courthouse based on any sign of weakness in any affiliates within a corporate family. *Id.* at 276-77. Notably, in reaching this conclusion, the *Auto Train* court assessed whether the benefits of retroactive relief in this disruptive manner outweighed the harm. *Id.* at 277. It concluded that the correct way to view this harm is based not on the innerworkings of the relationship between the transferor and its debtor affiliate, but instead on the public view that these were separate companies. *Id.* at 277.

Here, the Trustee conceded at oral argument that the relief he is seeking is the same as substantive consolidation, but the Bankruptcy Court wholly disregarded the teachings of *Auto Train*. (Decision at 40-42.) The Bankruptcy Court did not consider the conflict with the Bankruptcy Code presented by the Trustee's use of the alter ego doctrine to create Section 549 liability for post-petition transfers (an issue faced by other Joint Defendants), which is even more acute than the conflict that existed for the preference claims in *Auto Train*. For example, the Bankruptcy Court did not grapple with the fact that, had the Joint Defendants received notice that the Non-Debtor Transferors were one-and-the-same with the Debtor, they could have ceased those business relationships or sought an order from the Bankruptcy Court to determine whether transacting business with the Non-Debtor Transferors was authorized under the Bankruptcy Code. Moreover, the Bankruptcy Court's application of alter ego doctrine in this manner is even more anomalous because section 549(b) provides a defense to "gap period" transferees of a debtor in an involuntary bankruptcy proceeding to the extent of an exchange for value even when the transferee _knew_ of the pending bankruptcy case. Yet, based on the Bankruptcy Court's Decision, the Joint

Defendants who are facing section 549 claims, but are not alleged to have had any knowledge of the relationship between the Debtor and the Non-Debtor Transferors or the filing of the Debtor's bankruptcy case, would have no such defense.

Compounding this conflict with the Bankruptcy Code's policies, the Bankruptcy Court refused to consider the fact that the Trustee did not allege that the Joint Defendants were anything other than unknowing recipients of transfers from Non-Debtor Transferors, and instead insisted on focusing solely on the Trustee's allegations that the Debtor was involved in a "shell game," which it viewed as central to the alter ego analysis. (Decision at 42.) This again runs afoul of *Auto Train*, which criticized the lower court's focus on the inner relationship of the transferor and its debtor affiliate and held that the more probative question is the public view of whether these were separate corporate entities, in determining whether to retroactively apply an equitable doctrine to create avoidance liability. *Auto Train*, 810 F.2d at 277-78.

Second, even putting aside the analogy of substantive consolidation, there is substantial grounds for disagreement concerning the Bankruptcy Court's rejection of (or failure to confront) the few cases that have addressed whether a trustee or debtor can use the equitable doctrine of alter ego to avoid post-petition transfers against a non-insider. In the only cases to address the use of alter ego to create section 549 liability against third party (non-insider) transferees, the bankruptcy court in both *Covey v. Casey's General Stores, Inc. (In re Duckworth)*, 2012 WL 4434681 (Bankr. C.D. Ill. Sept. 24, 2012), and its companion decision in *Covey v. Peoria Speakeasy, Inc. (In re Duckworth)*, 2013 WL 1397456 (Bankr. C.D. Ill. Apr. 5, 2013), resoundingly rejected the application of the alter ego doctrine in this manner and under a nearly identical set of facts as those alleged by the Trustee. In *Duckworth*, the debtor used bank accounts of a corporation and a limited liability company to hide the proceeds of grain sales from a lender that had a lien on such proceeds.

2012 WL 4434681, *1.  On the eve of bankruptcy, the debtor withdrew funds from those two entities and deposited them into the account of another limited liability company and from that account made post-petition transfers to pay his personal expenses, which transfers the trustee unsuccessfully sought to recover under section 549.  *Id.*  Similarly, in *Lawler v. RepublicBank Dallas (In re Lawler)*, 53 B.R. 166, 168–70 (N.D. Tex. 1985), the court rejected the retroactive application of an alter ego finding that would have invalidated a creditor's foreclosure of its mortgage on property owned by the alleged alter ego because the creditor had relied on the debtor's legal separateness at the time of the foreclosure.  In the Decision, the Bankruptcy Court did not engage in any analysis or discussion of *Lawler.*

Finally, there are substantial grounds for disagreement on whether the Bankruptcy Court correctly determined that "nunc pro tunc" relief is not being sought and that "[a]lter ego seeks a remedy based on existing facts, just as breach of contract claim seeks a remedy on existing facts." (Decision at 38.)  Again, the Bankruptcy Court viewed the Trustee's claims based exclusively on the allegations of the inner workings of the Debtor and the Non-Debtor Transferors.  Its analysis ignored, contrary to the observations in *Duckworth*, *Lawler* and *Auto Train*, that applying an equitable doctrine to create after-the-fact avoidance liability requires viewing the world from the perspective of the transferee—not the transferor.  *See Auto-Train*, 810 F.2d at 277-78 ("[w]hile it may be true that [the debtor] and [transferor] operated internally as one entity, this bears little on the issue of [the transferee's] reliance on [the transferor's] apparent separateness.  Far more probative is the overwhelming evidence that [the transferor] and [debtor] continually maintained the appearance of separate corporations in the public eye."); *Duckworth*, 2012 WL 4434681, at *6 (holding that alter ego can only be used in bankruptcy where interests of creditors of alleged alter ego are not adversely affected; observing courts must ensure that application of doctrine would

30

not work injustice on those who dealt with such entity in good faith); *Lawler,* 53 B.R. at 169–70 (rejecting application of alter ego to avoid foreclosure sale where creditor relied on separateness of alleged alter ego).

From the perspective of the Joint Defendants, a ruling years after the fact that the Joint Defendants were, unbeknownst to them at the time, transacting with a debtor subject to the powerful provisions of the Bankruptcy Code would be "revisionist history—creating 'facts' that never occurred in fact," which the Supreme Court has held should not be done by court order. *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 589 U.S. at 65.

### D.      Hearing this Appeal Will Materially Advance the Underlying Litigation

A ruling on these critical gating issues will materially advance the ultimate resolution of this mass of adversary proceedings. Because the Trustee's entire litigation campaign rests on untested and controlling questions of law, resolution of even just one of these issues would substantially resolve the vast majority of the more than 200 cases brought by the Trustee. Importantly, whether certification is appropriate does not depend on the reversal of the Bankruptcy Court on every issue. Rather, reversal on any of the issues identified would likely end or materially impact the trajectory of these cases. *See, e.g., Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995) (certification to consider "legal effect of a forum-selection clause"); *Baker*, 232 F. Supp. 3d at 256 (*sua sponte* certification because "complex and novel" issues might have "significant impact" on case).

Without the benefit of interlocutory review, the Joint Defendants will have no choice but to endure this unprecedented pressure campaign, which has already resulted in costly and protracted litigation for the Joint Defendants, whose only connection in these cases was unknowingly providing goods and services to alleged business front entities of the Debtor. Because the Trustee appears dead set on upending established commercial norms and creating new law

based on wholly untested and legally unsupported theories, and expanding a trustee's Congressionally prescribed powers, the precedential value of these cases cannot be overstated.

**III.**     **CONCLUSION**

WHEREFORE, Zeta Global Corp., joined by the other Joint Defendants indicated on Exhibit B, request that the Court grant the Motion for Leave and authorize the Joint Defendants' interlocutory appeal on the questions of law specified above.

Dated: New York, New York
       March 18, 2025

                                   DLA PIPER LLP (US)

                                   By:  _/s/ John J. Clarke, Jr._
                                        John J. Clarke, Jr. (ct31251)
                                        john.clarke@us.dlapiper.com

                                   1251 Avenue of the Americas
                                   New York, New York 10020
                                   (212) 335-4500

                                        and

                                   C. Kevin Kobbe (*admitted pro hac vice*)
                                   kevin.kobbe@us.dlapiper.com
                                   650 South Exeter Street, Suite 1100
                                   Baltimore, Maryland 21202
                                   (410) 580-4189

                                   *Counsel for Zeta Global Corp.*

<u>**CERTIFICATE OF SERVICE**</u>

I am counsel for Defendant Zeta Global Corp. in this adversary proceeding.  I certify that, on March 18, 2025, I caused a copy of the foregoing to be filed electronically using the Court's electronic case filing system, which will provide notice of this filing electronically to all parties who have appeared in this adversary proceeding.

*/s/ John J. Clarke, Jr.*
_____
John J. Clarke, Jr. (ct31251)
